**GORDON v. WEIR et al.**

No. 8176.

United States District Court
E. D. Michigan, S. D.

March 19, 1953.

Gregory S. Dolgorukov, Detroit, Mich., Dugald S. McDougall, Chicago, Ill., for plaintiff.

Walter Martin, Saginaw, Mich., for defendants.

KOSCINSKI, District Judge.

This is an action for copyright infringement filed under the copyright laws of the United States, particularly the Act of July 30, 1947 and earlier laws of the United States therein codified. Title 17 U.S.C.A. § 1 et seq. Defendants filed an answer and cross-bill, denying the allegations in plaintiff's complaint and charging plaintiff with unfair trade practices and unfair competition, by maliciously and falsely circulating statements among customers of defendant Weir and trade generally that licensing and publishing certain material constitutes an infringement upon plaintiff's rights.

A trial of the issues was had and, upon the record and evidence submitted at the trial, this court makes the following

### Findings of Fact

1. Some time prior to February 21, 1934 Edwin I. Gordon, plaintiff's father, created and composed an original advertisement of a dot-counting contest which portrays merchandise given as a prize in a picture made up of a large number of dots, offering to the reader a main prize or prizes consisting of merchandise and secondary prizes consisting of credit checks applicable to the purchase price of the prize merchandise. It is characterized by an illustration of the prize merchandise located prominently on such advertisement and formed from a large number of dots, with a headline invitation across the top featuring the value of the prizes offered, and a border or side margin for the advertisement consisting of enumeration of the prizes, each prize or group of prizes being separately featured in an individual border, in the form of squares, within the body of the advertisement.

2. The advertisement was first published in the Clinton Herald, a newspaper published in Clinton, Iowa, on February 21, 1934, in connection with a contest conducted by the Volckman's Furniture Store of that city, and carried a copyright notice on its face.

3. On March 5, 1934 said Edwin I. Gordon, obtained a Certificate of Copyright No. 57529, Class A5, covering this advertisement as a periodical contribution, described in the certificate as $10,000 Worth of Prizes to be Given Away Free, Volckman's Furniture Store. 300 Prizes in All. Just Count the Dots (Dotted Living Room Suite). By Edwin I. Gordon."

4. After the first publication said Edwin I. Gordon licensed manufacturers and retailers to make use of advertisements embodying the features covered by his said Copyright.

5. Plaintiff herein is engaged in the business of advertising and sales promotion. After the death of his father, Edwin I. Gordon, in connection with his own business, continued the business of licensing manufacturers and retailers in the use of the advertising material covered by said Copyright Registration No. 57529.

6. From time to time plaintiff prepared other advertisements which varied slightly

from the original, created by his father and covered by Copyright Registration No. 57529, in which the drawings depicted furniture of then current styles, and added embellishments to make the advertisement more attractive and noticeable. He obtained copyright registrations on a number of such advertisements, embodying the original with such minor changes.

7. During 1948 and 1949 one A. G. Bondie of Highland Park, Michigan, doing business as Business Builders, represented plaintiff as his agent in the licensing of the contest advertisements on behalf of plaintiff. In September 1948 said Bondie contacted defendant Weir, then engaged in the operation of a furniture store in Saginaw, Michigan, under the name of Weir Furniture, and as plaintiff's agent solicited Weir to take a license to use said advertising material in a "Count the Dots" sales-promotion contest.

8. On September 14, 1948 plaintiff's agent Bondie and defendant Weir entered into a contract granting such license to defendant Weir in consideration of payment by Weir of a 5% commission on the selling price of all merchandise sold as a result of the licensed contest advertisement. In connection therewith Bondie furnished to Weir the newspaper mat necessary to permit convenient newspaper reproduction of the advertisement of plaintiff's copyrighted material and such advertisement was in due course published in the local newspapers on two occasions during the period of the contests. The advertisement substantially contained the material embodied in the original advertisement of Februray 21, 1934, but depicted an article of furniture conforming to current styles in furniture, and other changes included prize announcements enclosed within stars rather than squares. The changes in this advertisement were also covered by a patent but the newspaper mat thereof, delivered by Bondie to Weir, carried a notice of the original copyright issued to plaintiff's father.

9. The advertising and contest proved highly successful and resulted in sales of merchandise by Weir in the amount of $30,000.00 and, pursuant to his contract, Weir paid Bondie commissions in the sum of $1,500.00.

10. After the contest Weir approached Bondie, expressed his satisfaction with the results of the contest, suggested that he could interest other dealers, and asked whether he could undertake the promotion of such contests. Bondie told him it could be arranged, and shortly thereafter Weir called on Bondie at his home and received from Bondie the necessary material to enable Weir to promote contests and grant licenses for the copyrighted advertisements on behalf of Bondie as agent of plaintiff. Such material included the mat of the advertisement, blank dealer contracts, and sheets for recording sales, obtained from plaintiff by Bondie for use in his work as plaintiff's agent.

11. Defendant Weir did not undertake the promotion of the contests and licensing of the copyrighted advertising material as plaintiff's representative but instead, set out to exploit, for his own purpose and profit, the advantages and benefits of plaintiff's copyrighted advertising material of which he had knowledge through his own use thereof pursuant to his contract with Bondie, plaintiff's agent. He also had knowledge of the original advertisement which was registered under Copyright No. 57529, dated March 5, 1934, having admitted on the witness stand, during the trial, that he checked the records of the Copyright Office and found a record of such copyright.

12. As an instrumentality for his promotional activity defendant Weir set up a wholly owned corporation called "Weir's Sales Inc." He employed as a form of license contract a document identical, word for word, with the contract forms supplied to him by Bondie, except for the substitution of different contracting parties and figures. He did not, however, use the identical advertisement used by plaintiff, but prepared his own advertisement, copying substantially all the important features of plaintiff's advertisement covered by his Copyright No. 57529 and the later advertisement in which plaintiff made minor

changes and for which defendant Weir had a newspaper mat. The changes made by Weir were only colorable and superficial.

13. The substantial identity between the advertisement prepared by defendant Weir and plaintiff's copyrighted advertisement is made clear by comparison of their respective texts, the important portions of which are set forth hereunder in parallel columns:

| Copyrighted Publication | WEIR'S Advertisement |
|---|---|
| 1. $10,000 Worth of Prizes to be Given Away Free! | Over $7,500.00 Worth of Prizes to be Given Locally Free. |
| 2. Dominant feature of advertisement is picture of living-room furniture outlined in dots. | Dominant feature of advertisement is picture of living-room furniture outlined in dots. |
| 3. Just Count the Dots! | How Many Dots? |
| 4. 300 Prizes in All. | More Than 240 Prizes in All. |
| 5. Prizes listed in boxes, with first prize consisting of living-room furniture and subsequent prizes consisting of credit checks redeemable as part payment for furniture purchases. | Prizes listed in circles, the first three prizes being furniture and the remaining prizes being credit checks redeemable as part payment for furniture purchases. |

14. The first use by defendant Weir of the advertisement copied by him from plaintiff's copyrighted advertisement was in connection with a sales-promotion contest conducted by him in his own furniture store, Weir Furniture, at Saginaw, Michigan, during January, 1949, when said copied advertisement was published in the local newspapers.

The defendant, Weir, although he was the owner of Weir Furniture, denied under oath having any knowledge of the quantity of goods sold as a result of the publication of the copied advertisement in January, 1949. No information, therefore, is available to the court to determine the quantity of goods sold in response to such publication except defendant Weir's admitted quantity of goods sold as a result of the earlier publication of plaintiff's advertisement in September, 1948, which was $30,000.00 on which defendant Weir paid a commission of $1,500.00 to plaintiff's agent, Bondie.

15. At substantially the time of the publication of the copied advertisement plaintiff communicated with defendant Weir and demanded that he cease infringement of plaintiff's copyright but defendant did not heed the demand and continued to make repeated use of the copied advertisement, as hereinafter found. Defendants other than Weir were similarly notified of the claimed infringement, after publication by them of the advertisement supplied to them by Weir.

16. Thereafter defendant Weir caused publications of the copied advertisement in the Ann Arbor News, Ann Arbor, Michigan, during February, 1949, pursuant to a contract with Warehouse Furniture Store, Ann Arbor, Michigan. Defendant Weir denied under oath having any knowledge or records of the amount paid to him by Warehouse Furniture Store in connection with such publication of the copied advertisement.

17. On or about March 24, 1949 defendant Weir, in cooperation with defendant Lysle A. DesErmia, caused publications of the copied advertisement in the Tecumseh Herald, Tecumseh, Michigan, in behalf of DesErmia's Furniture Store and again on or about September 29, 1949, both said defendants caused publications of the copied advertisement in the same news-

paper. In connection with these two contests and publications incidental thereto, defendant Weir received from defendant DesErmia the sum of $351.16 on the first contest and publication and the sum of $250.00 on the second contest and publication. Defendant DesErmia, after the first contest and publication, was notified by plaintiff that the publication constituted infringement of his copyright but DesErmia made use of the copied advertisement, with knowledge of the claimed infringement, on the second occasion.

18. On or about April 28, 1949, defendant Weir and defendant Willard H. Johnson caused the copied advertisement to be published in the Belding Banner News, in the Lowell Ledger, in the Greenville Daily News, and in the Ionia Sentinel Standard, in connection with a contest on behalf of said defendant Johnson. The newspapers mentioned are located in small communities neighboring that in which defendant Johnson conducted his business and all related to the same contest. Defendant Weir received from defendant Johnson, in connection with such contest and publication, the sum of $49.65.

19. On or about May 11, 1949 the copied advertisement was caused to be published by defendants Weir and Carl Lundquist in the Mason County Press, and in the Ludington Daily News, and also in approximately 1000 circulars distributed in and near Scottville, Michigan, in connection with two separate contests conducted by defendant Lundquist, on both of which Lundquist obligated himself to pay and did pay to Weir commissions of $648.19.

20. On or about July 7, 1949 the copied advertisement was caused to be published by defendants Weir and Elmer Swanlund in the Cooperville Observer in behalf of the furniture store owned by Swanlund and contest conducted by him. On the basis of sales resulting from the contest and publications defendant Weir or the Weir Sales corporation of which he was sole owner received the sum of $874.78 as commissions.

21. On or about October 13, 1949 defendant Weir caused the copied advertisement to be published in a newspaper in West Branch, Michigan, in behalf of the Winter Furniture Company, but no information has been furnished to the court as to amount of commissions, if any, received by Weir.

22. In addition to the above contests which were held in the State of Michigan, defendant Weir, through his duly appointed and authorized agents, caused the copied advertisement to be published in the Muncie, Star, Muncie, Indiana and also in the Goshen News Times Democrat, Goshen, Indiana, in June, 1949.

23. Plaintiff's agent, Bondie, licensed use of the copyrighted advertising on behalf of plaintiff in consideration of payment by the licensee of commissions on sales of merchandise, based on each contest rather than on each publication. It was customary to have a reprint of each advertisement while the contest was in progress. In each instance cited above, there appeared a reprint of the same advertisement before each contest closed. As found by the court herein, in small localities reprints of the same advertisement appeared in more than one newspaper in several small neighboring localities, advertising the same contest.

24. In support of their cross-bill defendants offered evidence to the effect that merchants conducting contests and publishing defendant Weir's copied advertisement, including the remaining defendants, were contacted by plaintiff and informed they were infringing on plaintiff's copyright and that a demand was made upon them to pay plaintiff or his agent the commissions which plaintiff or his agent claimed due by reason of using his copyrighted material. They were also informed by plaintiff that other infringers had been subjected to suit and that plaintiff insisted on asserting his rights against them under his claimed copyright. These statements are not denied by plaintiff.

25. During the pendency of this suit defendant Weir filed a petition in bankruptcy, he was adjudicated a bankrupt, a trustee in bankruptcy was appointed to take title to his assets, and Weir was eventually discharged in bankruptcy. The bankruptcy

schedules and proceedings, however, failed to show that plaintiff was asserting a claim against defendant, although this action was then pending.

Plaintiff claims protection, under his copyright, against copying or evasive imitation of his advertisement, considered in its entirety as a combination of original ideas.

Defendant Weir contends that plaintiff did not, by his copyright, acquire any exclusive rights to use a dot-counting contest since ideas, as such, are not copyrightable; that he cannot claim by his copyright exclusive right to use any of the phraseology in the advertisement; that the copyright merely protects him against use by others of the drawing used in the copyrighted advertisement; and, since defendant created his own drawing and material in the advertisement, and obtained a copyright thereon, his advertisement does not infringe on plaintiff's copyright and he has a right to license others under his own copyright without interference by plaintiff.

## Conclusions of Law

■ 1. Although there is no property right in an idea, there may be a property right in a particular combination of ideas where the combination is reduced to concrete form. Stanley v. Columbia Broadcasting System, Cal.App., 192 P.2d 495; Id., 35 Cal.2d 653, 221 P.2d 73, 23 A.L.R. 2d 216. The advertisement covered by plaintiff's copyright represents such a combination of ideas in concrete form.

■ 2. Advertisements which exhibit some original intellectual effort as to conception, composition, and arrangement, have been held copyrightable under the United States copyright statutes. Bleistein v. Donaldson Lithographing Co., 188 U.S. 239, 23 S.Ct. 298, 47 L.Ed. 460; Westerman Co. v. Dispatch Printing Co., 249 U.S. 100, 39 S.Ct. 194, 63 L.Ed. 499; Ansehl v. Puritan Pharmaceutical Co., 8 Cir., 61 F.2d 131; Sebring Pottery Co. v. Steubenville Pottery Co., D.C., 9 F.Supp. 383, 384. Under the cases cited the advertisement created and originated by plaintiff's father, Edwin I. Gordon, was copyrightable.

3. The recent trend in copyright actions indicates a tendency on the part of courts to afford more liberal protection to the copyright owner and such owners have not been denied relief on the ground that their work is not of sufficient literary quality to merit copyright protection. Ansehl v. Puritan Pharmaceutical Co., supra.

■ 4. Unlike patent law, which gives the patent owner absolute ownership of the patented domain, copyright law gives the copyright owner no right other than to prevent *copying*. Arnstein v. Broadcast Music, Inc., 2 Cir., 137 F.2d 410.

5. Upon the death of his father, Edwin I. Gordon, plaintiff acquired all the right, title and interest in and to Copyright No. 57529 covering the advertisement material created and originated by his father. As legal owner of such copyright he is entitled to restrain others from copying such material and to claim damages for infringement.

■■ 6. Copying is not confined to a literary repetition, and infringement of a copyright is not avoided by taking the substance or idea and producing it through a different medium and picturing in shape and details in sufficient imitation to make it a true copy of the subject thought of by the originator of the copyrighted work. King Features Syndicate v. Fleischer, 2 Cir., 299 F. 533. "Copy", constituting infringement of copyright, is that which comes so near to original as to give every person seeing it the idea created by the original. Harold Lloyd Corp. v. Witwer, 9 Cir., 65 F.2d 1.

7. Defendant's contentions as to extent of copyright protection are inconsistent with his treatment of the copied advertisement. He expended time, money, and effort in procuring a copyright thereon and asserted rights of licensing others to use it, deriving substantial profits therefrom; it is extremely doubtful that he would have sought copyright protection for the advertisement he claimed to be his own if all he gained thereby would be the right to prevent others from using the exact drawing shown in the advertisement.

8. Defendant Guy Edmond Weir willfully and deliberately copied and thereby infringed the material covered by plaintiff's copyright.

9. Issuance of the copyright certificate to defendant on the plagiarized material does not relieve him from liability for such infringement. The Copyright Office, by accepting his material as copyrightable, does not thereby determine his rights under copyright laws any more than a registrar of documents covering land titles, by accepting a deed for recording, determines title of the grantee therein to the land. Defendant Weir applied for his copyright on material submitted by him as originating with him and created by him, whereas, in fact, the material was plagiarized. To be copyrightable, a work must be original in that the author has created it by his own skill, labor, and judgment. Dorsey v. Old Surety Life Ins., 10 Cir., 98 F.2d 872, 119 A.L.R. 1250; such work cannot directly copy or evasively imitate the work of another. Hoffman v. LeTraunik, D.C., 209 F. 375; Cain v. Universal Pictures Co., D. C., 47 F.Supp. 1013. Had defendant created and originated the material in exact form as plaintiff's, but had no knowledge of the existence of plaintiff's material and did not *copy* it, there could be no infringement, since there was no copying. But in the present case defendant Weir deliberately and intentionally copied and, therefore, infringed plaintiff's copyrighted material.

10. Ordinarily, each separate publication would constitute an infringement, but for the practice of plaintiff to authorize a reprint of the advertisement during a particular contest and to charge commissions on the basis of sales during each contest only, rather than by publication. The court concludes, therefore, that under such circumstances one or more publications during the duration of the same contest constitutes but one infringement. Doll v. Libin, D.C., 17 F.Supp. 546.

11. Defendant Guy Edmond Weir is liable to plaintiff for damages, as authorized by the copyright statutes with respect to each contest conducted, licensed, or authorized by him.

12. The copyright statute, 17 U.S.C.A. § 101(b), provides that a copyright infringer shall be liable to pay to the copyright proprietor such damages as he may have suffered due to the infringement, as well as all the profits which the infringer shall have made from such infringement, or in lieu of actual damages and profits, such damages as to the court shall appear to be just, and that in assessing such damages the court may, in its discretion, allow amounts set forth in the statute for specific acts of infringement, but that such damages shall in no other case exceed the sum of $5,000.00 nor be less than the sum of $250.00, and shall not be regarded as a penalty.

13. In construing portions of identical statutory provisions in the Act from which the above is derived, the United States Supreme Court, in Sheldon v. Metro-Goldwyn Corp., 309 U.S. 390, 400, 60 S.Ct. 681, 84 L.Ed. 825, expressed the view that Congress intended application of the same principles in copyright as in patent cases with respect to recovery of profits. At least by dicta it approves interpretation placed by courts on the language that "a patent owner may have such damages as well as profits which the infringer shall have made" to mean that the patent owner, and hence the copyright owner, might have one or the other, whichever was the greater. Cogent reasons for this construction are stated in that opinion.

14. Under the statute plaintiff is, therefore, entitled to recover for each infringement either actual damages or profits of the defendant or defendants, by reason of the infringement, whichever is greater; as to infringements as to which neither damage nor profit was proven, the court may assess such damages as it deems just, within the statutory maximum and minimum.

15. As to defendants other than Weir, lack of knowledge of the infringement on their part would not relieve them of liability. Toksvig v. Bruce Pub. Co., 7

Cir., 181 F.2d 664. Besides lack of knowledge, however, the remaining defendants used the infringing advertisements under a copyright issued to Weir which appeared to be valid on its face, since the certificate of registration is prima facie evidence of the facts stated therein. Nutt v. National Institute Incorporated for the Improvement of Memory, 2 Cir., 31 F.2d 236. There must be some point at which an innocent infringer should be protected from liability other than an accounting of profits which he would not have made but for use of such copyrighted matter. In other words, equity under such circumstances would require that he need not respond in damages unless he made a profit which he would not have otherwise made. Nor should he be held liable for damages realized by a co-infringer. Washingtonian Pub. Co. v. Pearson, 78 U.S.App.D.C. 287, 140 F.2d 465. Since there has been no proof that defendants other than Weir sold more merchandise by use of the infringed advertisement than they would have sold in the ordinary course of business, and that, after deduction of prizes, advertising costs, commissions to Weir and other items, they realized a profit, nor has it been shown that plaintiff sustained actual damages except for the commissions which they, rather than Weir, would have received, no damages should be assessed against said defendants except in the case of defendant DesErmia who is guilty of infringement by use of the infringing material in his second contest, after notice of the infringement.

16. With respect to defendant Weir's publications of the infringing advertisement in the Saginaw newspapers on or about January 23, 1949 plaintiff is entitled to recover of said defendant damages in the sum of $1,500.00, defendant Weir having failed to disclose the amount of sales resulting from the publications; the assessment of damages is, therefore, made on the basis of sales made and commissions paid by defendant to plaintiff's agent in a prior contest, conducted under a valid contract.

17. With respect to the publications by defendant Weir in connection with the Warehouse Furniture Store contest, the Willard H. Johnson contest, the Winter Furniture Company contest, and the publications in the Muncie Star and in the Goshen News Times Democrat, plaintiff is entitled to recover from said defendant statutory damages of $250.00 for each of said five infringements or a total of $1,250.00.

18. With respect to the remaining contests and publications incident thereto, plaintiff is entitled to recover from defendant Weir the commissions collected by him as follows:

| | |
|---|---|
| First DesErmia contest | $351.16 |
| Second DesErmia contest | 250.00 |
| Lundquist contest | 648.19 |
| Swanlund contest | 874.78 |

19. With respect to the second DesErmia contest plaintiff is entitled to recover from defendant, Lysle A. DesErmia, statutory damages of $250.00.

20. In addition to the foregoing specific damage awards, plaintiff is entitled to a judgment against defendant Guy Edmond Weir, for attorney fees, the sum of $1,000.00, plus his other legal costs of suit. 17 U.S.C.A. § 116.

21. Defendant Weir's liability for such willful copyright infringement is not affected or discharged by his bankruptcy. 11 U.S.C.A. § 35.

22. The defendants, jointly and severally, shall be permanently enjoined, for the full life of plaintiff's copyright herein declared on, and any renewal thereof, from committing any further infringement of the same by publishing or causing to be published the subject matter of said copyright.

23. A judgment may be presented, dismissing defendants' cross-bill for want of equity.

24. A final judgment, pursuant to these Findings of Fact and Conclusions of Law, may be presented by plaintiff's counsel to the court for signature and filing, upon due notice to all parties.