**Mario BACCARO, as Trustee and Executor of the Estate of Antonio De Martino, Deceased, who did business under the name and style of Italian Book Co., Plaintiff,**

v.

**Vito PISA, Ivon B. Newman and Newark Broadcasting Corp., Defendants.**

United States District Court
S. D. New York.
March 21, 1966.

Arthur E. Garmaize, New York City, for plaintiff.

Irving Younger, New York City, for defendants.

FREDERICK van PELT BRYAN, District Judge:

On September 28, 1965, plaintiff recovered a default judgment against defendant Pisa on the issue of liability for copyright infringement after Pisa's answer had been stricken for failure to appear for examinations on deposition and refusal to file answers to interrogatories. See Rule 37(d), F.R.Civ.P. Plaintiff now moves for summary judgment solely on the remaining issues of damages and counsel fees.

The material facts are relatively simple. Plaintiff, as executrix of the Estate of Antonio De Martino, is suing as the copyright proprietor of two Italian musical compositions entitled "Dicitencello Vuie" and "Parlami D'Amore, Mariu." Defendant Pisa is the owner of a New York restaurant, the "Chez Vito." Defendant Newark Broadcasting Corp. operates Radio Station WVNJ, located in Newark, New Jersey. Defendant Newman is the General Manager of Station WVNJ. None of the issues as to defendants Newark Broadcasting and Newman have yet been determined.

Some time during 1959 in Rome, Italy, Pisa—acting through a corporation under his control, Vito Records, Ltd.—manufactured a long-playing album entitled "The Three Musketeers of the Opera at Chez Vito." This record included reproductions of the two musical compositions sued on here. Thereafter Pisa and Newman apparently concluded an informal arrangement whereby the record would be played over the AM and FM facilities

of Station WVNJ. Each of the copyrighted compositions recorded in the album was broadcast over WVNJ-AM on eleven occasions between September 8, 1960, and March 7, 1962, and over WVNJ-FM on eight occasions between August 3, 1961 and March 7, 1962. The Chez Vito restaurant was the obvious beneficiary of any favorable publicity. These broadcasts constituted public performances for profit in violation of plaintiff's rights under the Copyright Law. 17 U.S.C. § 1(e). And defendant Pisa's liability for infringement has been established by the judgment against him.[1]

Since plaintiff is unable to prove his actual damages as a result of Pisa's failure to comply with the orders of this court, he perforce seeks to recover his due "in lieu of actual damages and profits" under the applicable provisions of the copyright law.[2] In the language of the statute an award thereunder should ultimately reflect "such damages as to the court shall appear to be just." Plaintiff urges that as far as the radio broadcasts are concerned[3] justice requires nothing less than a finding that he is entitled to the statutory minimum of $250 every time one of the recordings of a copyrighted song was broadcast over either the AM or FM facilities of Station WVNJ. On the other hand, Pisa contends that a "just" damage award should amount to no more than $500, twice the statutory minimum for each of the two copyrights.

Thus the question for decision here is whether the series of broadcasts constituted two "infringements" by the defendant Pisa, 25 as plaintiff urges,[4] or some

---

1. The allegations in the complaint were directed against Pisa as a joint tortfeasor and he is liable on that basis. See Reeve Music Co. v. Crest Records, Inc., 285 F.2d 546 (2 Cir. 1960); H. M. Kolbe Co. v. Shaff, 240 F.Supp. 588 (S.D.N.Y.1965); Famous Music Corp. v. Seeco Records, Inc., 201 F.Supp. 560 (S.D.N.Y.1961); Massapequa Pub. Co. v. Observer, Inc., 191 F.Supp. 261 (S.D. N.Y.1961). Though in some cases there is doubt as to the desirability of entering judgment against a defaulting defendant who is jointly liable before the case is determined as to the other defendants not in default, see 6 Moore, Federal Practice ¶ 55.06, at 1819 (1964), the issue is closed before me because a judgment has already been entered against Pisa—and appropriately so here.

2. 17 U.S.C. § 101 reads in pertinent part: "If any person shall infringe the copyright in any work protected under the copyright laws of the United States such person shall be liable * * *;
    "(b) *Damages and profits; amount; other remedies.*—To pay to the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement, as well as all the profits which the infringer shall have made from such infringement * * *, or *in lieu of actual damages and profits, such damages as to the court shall appear to be just,* and in assessing such damages the court may, in its discretion, allow the amounts as hereinafter stated * * *, *and such damages*

    *shall in no * * * case exceed the sum of $5,000 nor be less than the sum of $250, and shall not be regarded as a penalty. * * *
    * * * * * * *
    "Fourth. * * *; in the case of other musical compositions $10 for every infringing performance.* (Emphasis added.)

3. The other elements of damage—an award for alleged performances of the composition at the Chez Vito restaurant and compensation for counsel fees—are discussed at p. 905, *infra.*

4. Plaintiff concludes that 25 "infringements" have taken place by the following line of reasoning: the "Three Musketeers" record was played on eleven occasions over WVNJ-AM (September 8, 1960; February 20, March 23, April 18, May 29, October 3, November 1, December 7, 1961; January 5, February 6, March 7, 1962); the record was played on eight occasions over WVNJ-FM (August 3, September 1, October 3, November 1, December 7, 1961; January 5, February 6, March 7, 1962). Since both songs presumably were infringed every time the record was played, the total would be 38. However, apparently the copyright protection for the composition "Parlami D'Amore Mariu" expired without renewal on August 30, 1961. See 17 U.S.C. § 24. Thus the 13 AM and FM broadcasts of the record occurring after that date infringed only one, rather than two copyrights. Plain-

other number which would more readily yield a "just" award of damages.

The literal language of § 101(b), combining as it does an "ambiguous hodge-podge of improvisations,"[5] provides only vague outlines for the solution of the problem. At one extreme, plaintiff's insistence that every infringing performance justifies a minimum award of $250 would nullify the statutory yardstick provision prescribing "$10 for every infringing performance" of a copyrighted musical composition. On the other hand, defendant apparently takes the position that the mandatory minimum and maximum figures prescribed for each "case" do not apply to each "infringement" as § 101(b) suggests, but only apply to the number of copyrighted works infringed, viz. two. Thus under defendant's reading of the statute a single copyright can be infringed only once.

Neither of the interpretations advanced by the competing parties offers a satisfactory means of reconciling the various terms of the statute or achieving the ultimate objective here—the assessment of a "just" damage award.

Fortunately, the case law under § 101 (b) is more instructive. The issue was posed, but not conclusively decided, in L. A. Westermann Co. v. Dispatch Printing Co., 249 U.S. 100, 39 S.Ct. 194, 63 L. Ed. 499 (1919), where the Supreme Court found that two publications of a single copyrighted pictorial illustration at 26 day intervals constituted separate and

distinct cases of infringement, justifying an award of twice the statutory minimum. But the court reserved judgment on whether the outcome would have been otherwise if the "[second] publication had been merely a continuation or repetition of the first." Id. at 105–106, 39 S. Ct. at 195. Compare Jewell-La Salle Realty Co. v. Buck, 283 U.S. 202, 51 S.Ct. 407, 75 L.Ed. 978 (1931).

The judicial adumbrations of the reservation in the *Westermann* opinion have been fairly summarized by Nimmer:

> "if the interval between succeeding publications is a matter of days the courts will be inclined to consider all such publications as part of a single infringing transaction, requiring but a single minimum damages award. If the interval between succeeding publications is for a substantially longer period then the courts will view each publication as giving rise to a separate claim for at least minimum damages." Copyright § 154.32, at 689 (1964) (footnotes omitted).

Thus the guiding "principle" distilled from the case law for the most part amounts to no more than a rather wooden reliance upon an arbitrary time standard. Successive publications at weekly,[6] monthly,[7] or yearly[8] intervals will be treated as separate "infringements," whereas a time lapse of merely two or three days[9] makes the succeeding publications "a continuation or repetition of the first."

---

tiff deducts this figure 13 from the original 38 and arrives at a total of 25 "infringements."

5. Davis v. E. I. duPont de Nemours & Co., D.C., 249 F.Supp. 329 (Jan. 20, 1966) (Feinberg, J.).

6. Zuckerman v. Dickson, 35 F.Supp. 903 (W.D.Pa.1940); see Gordon v. Weir, 111 F.Supp. 117 (E.D.Mich.1953), aff'd, 216 F.2d 508 (6 Cir. 1954).

7. See Burndy Engineering Co. v. Sheldon Service Corp., 127 F.2d 661 (2 Cir. 1942); Eliot v. Geare-Marston, Inc., 30 F.Supp. 301 (E.D.Pa.1939) (8 month interval); cf. Cory v. Physical Culture Hotel, Inc., 14 F.Supp. 977 (W.D.N.Y. 1936), aff'd, 88 F.2d 411 (2 Cir. 1937).

8. See Harry Alter Co. v. A. E. Bordon Co., 121 F.Supp. 941 (D.Mass.1954) (three publications in 1945, 1948, and 1950 respectively.)

9. Doll v. Libin, 17 F.Supp. 546 (D.Mont. 1936); see Gordon v. Weir, 111 F.Supp. 117 (E.D.Mich.1953), aff'd per curiam, 216 F.2d 508 (6 Cir. 1954) (publications "during February" one infringement). But see Advertisers Exchange, Inc. v. Bayless Drug Store, Inc., 50 F.Supp. 169 (D.N.J.1943) (publications on succeeding days were separate "infringements."); Select Theatres Corp. v. Ronzoni Macaroni Co., 59 U.S.P.Q. 288 (S.D. N.Y.1943) (each radio broadcast performance of a scene from a play was a separate "infringement").

It has also been suggested "that the nature of the business transaction giving rise to the infringement is significant, implying that a single integrated business transaction would result in one infringement, while separate and distinct transactions would result in more than one." Davis v. E. I. DuPont de Nemours & Co., 249 F.Supp. 329, 337 and n. 23 (S.D.N.Y. Jan. 20, 1966); cf. Markham v. A. E. Borden, 108 F.Supp. 695 (D. Mass.1952), rev'd on other grounds, 206 F.2d 199 (1 Cir. 1953). Accepting the view that a finding of multiple infringements may be necessary "to discourage wrongful conduct," F. W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 233, 73 S.Ct. 222, 97 L.Ed. 276 (1952); see Shapiro, Bernstein & Co. v. Remington Records, Inc., 265 F.2d 263, 273 (2 Cir. 1959), a rule which looks to the circumstances surrounding each infringing transaction makes sense in this case because the ultimate objective here is to determine the number of distinct occasions defendant Pisa has engaged in a separate taking of plaintiff's property as it is defined and safeguarded by the copyright law.

So viewed, I reject at the outset plaintiff's contention that the AM and FM broadcasts which occurred simultaneously on six separate dates each constituted separate "infringements" of the copyrighted compositions. The actual act of infringement in each instance occurred only once by playing the album over the recording facilities of the radio station.[10] Compare Cory v. Physical Culture Hotel, 14 F.Supp. 977, 985 (W.D.N.Y.1936). The result would not be changed by the fact that different audiences may have been reached through the two frequencies. A persuasive analogy is found in Davis v. E. I. duPont de Nemours & Co., 249 F.Supp. 329 (S.D.N.Y. Jan. 20, 1966). There Judge Feinberg in an exhaustive opinion held that an infringing television network broadcast, reaching 162 separate audiences, nevertheless constituted only one "infringement" for purposes of the statutory damage provisions of § 101(b). In any event, in view of my ultimate decision here, there is no reason to conclude that the assessment of a "just" award necessitates a holding that the simultaneous broadcasting of a single musical composition over both AM and FM frequencies amounts to two separate "infringements."

The pivotal question here, then, in the words of the Supreme Court, is whether each successive broadcast was "merely a continuation or repetition of the first." Under the decisional law the case at bar is relatively simple: the separate broadcasts at monthly intervals [11] each constituted a distinct "case" of "infringement." It may be readily concluded that each playing of a copyrighted composition was a separate taking of plaintiff's property for purposes of § 101(b). This is a case where the treatment of "each stick in a faggot [as] a single [infringement] unit" is manifestly proper. Cf. Bell v. United States, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). Computing the loss in this fashion, the damages in the case at bar amount to $4,750, the $250 minimum multiplied by each of the 19 infringements.[12]

---

10. Of course, so long as a single act infringed two copyrights protecting two separate musical compositions, for purposes of computing the damages two "infringements" would occur.

11. The minimum time interval between broadcasts—26 days—was precisely the period of time between the separate infringements in *Westermann*.

12. Both copyrights were separately infringed by the five AM broadcasts on September 8, 1960, February 20, March 23, April 18, and May 29 1961, a total of ten "infringements." Both copyrights were separately infringed by the FM broadcast on August 3, 1961; but only one was infringed by the AM broadcast of September 1, 1961, because "Parlami D'Amore Mariu" was no longer protected by the copyright law. The final six "infringements" of "Dicitencello Vuie," the only remaining protected composition, took place by the simultaneous AM and FM broadcasts of October 3, November 1, December 7, 1961; and January 5, February 6, and March 7, 1962.

There is nothing in Congress' open-ended direction to the courts to assess a "just" award under § 101(b) which would indicate that these damages should either be augmented or diminished. Pisa has made no effort to prove that the subsequent infringements were merely continuations or repetitions of the first. Since he does not disclaim knowledge of plaintiff's rights with regard to the broadcasts before the receipt of written notice from plaintiff on June 27, 1961, Pisa cannot convincingly urge that this series of broadcasts might be more realistically viewed as unintentional repetitions of the initial infringements of the two copyrights.[13] Rather, a default judgment was entered against him because on six occasions he failed to comply with orders of this court directing him to respond to plaintiff's notices of deposition and interrogatories. By thus obstructing the orderly processes of justice Pisa himself has made it impossible to adduce the facts as to his knowledge of plaintiff's copyrights. It may be inferred from his conduct that each monthly broadcast constituted a separate, distinct, and intentional encroachment upon plaintiff's rights. Justice is fully done here by finding separate "infringements" of the two copyrights for each monthly broadcast.

On the other hand, since plaintiff has prevailed on the crucial separate "infringement" point, a just award requires no more than the $4,750 represented by the multiple of the minimums. If defendant's infringing performances had been confined to a period of a few days rather than several years, under the case law plaintiff's damages would have been limited by the $5,000 maximum for a single "case" of "infringement." And this would be so though presumably the size of the audiences reached—and the extent of the resultant damages—would not have differed materially from that in the case at bar. Under the circumstances $4,750 represents a "just" measure of plaintiff's damages.

■■ Plaintiff also urges that he is entitled to an additional sum under § 101 (b) as compensation for an undetermined number of performances of his copyrighted compositions at the Chez Vito restaurant. Entry of the default judgment on the issue of liability only does not perforce establish as a fact every imputation in an affidavit relating to the extent of damages. There is no mention in the complaint of an undetermined number of performances at Chez Vito's. Plaintiff is still put to his proof on the damage issue. See Peitzman v. City of Illmo, 141 F.2d 956 (8 Cir.), cert. den., 323 U.S. 718, 65 S.Ct. 47, 89 L.Ed. 577 (1944); Thorpe v. National City Bank, 274 F. 200, 202 (5 Cir. 1921); Rule 55(b) (2), F.R.Civ.P.; 6 Moore, Federal Practice ¶ 55.07, at 1822 (1964); cf. Cromwell v. County of Sac, 94 U.S. 351, 356–357, 24 L.Ed. 195 (1876).

Furthermore, there is insufficient evidence in the papers before the court to support plaintiff's position with respect to the claimed restaurant performances. Defendant Newman testified on deposition that he heard *some* of the fourteen compositions on the "Three Musketeers" record performed at Chez Vito's, but these did not necessarily include the plaintiff's pieces. In his answers to interrogatories Newman denied that the two compositions here involved were "rendered and performed" at the restaurant. Similarly, the enthusiastic commendation by Sir Cedric Hardwicke

---

13. Section 101(b) suspends the "limitation as to the amount of recovery" for all infringements "occurring after the actual notice to a defendant." The notice provisions elsewhere in the copyright law have been extolled as the "keystone" of the mandatory licensing scheme. Shapiro, Bernstein & Co. v. Remington Records, Inc., 265 F.2d 263 (2 Cir. 1959). It may well be that notice, or the absence thereof, under some circumstances will be material on the question of whether infringing acts over a period of time should be treated as a single or multiple infringements for the purposes of computing damages. Compare Strauss, "The Damage Provisions of the Copyright Law," in 2 Studies on Copyright 997, 1008 (1963) (Study No. 22). But this is not so under the circumstances of the instant case.

printed on the jacket of the record states no more than that he had heard the "spontaneous singing" of "the lilting strains of an old Neopolitan song" at Chez Vito's. In short, there is no substantial evidence to support plaintiff's contentions that the two copyrighted works involved in this suit were publicly performed for profit at the Chez Vito. Plaintiff is not entitled to this item of damage.

 Finally, plaintiff seeks his attorney's fees in this action. Under 17 U.S.C. § 116 an award of counsel fees lies within the sound discretion of the trial court. See, e. g., Peter Pan Fabrics, Inc. v. Jobela Fabrics, Inc., 329 F.2d 194 (2 Cir. 1964); Orgel v. Clark Boardman Co., 301 F.2d 119 (2 Cir.), cert. den., 371 U.S. 817, 83 S.Ct. 31, 9 L.Ed.2d 58 (1962). The criteria for fixing reasonable fees are well established. See, e. g., Burnett v. Lambino, 206 F.Supp. 517, 519 (S.D.N.Y.1962); Cloth v. Hyman, 146 F.Supp. 185, 193–194 (S.D.N.Y.1956). The elements are provable with relative ease. Yet plaintiff's counsel here has made no effort to establish such important elements as the amount of time required to be spent on the case and how much of that time was devoted to the claim against Pisa as distinguished from the claims against the other defendants. Instead he urges that the court award him fees after observing "the size of the file in this case." [14]

This is scarcely a satisfactory guide for the exercise of judicial discretion in assessing an appropriate allowance. Fees are not awarded by this court on the basis of avoirdupois or bulk. There is no reason for excusing plaintiff's counsel from showing the amount of time and effort he necessarily spent on the Pisa phase of the case when he should have the information and the records to do so. His application for fees on summary judgment is denied.

Plaintiff's motion for summary judgment will be granted to the extent of awarding him the sum of $4,750 for damages resulting from the infringement of his copyrighted musical compositions, together with mandatory costs to be taxed. See 17 U.S.C. § 116. In all other respects the motion for summary judgment is denied. Direction for the entry of judgment pursuant to Rule 54(b), F.R.Civ.P., will not be made at this time since the issue of counsel fees remains open.

It is so ordered.

14. Reply Brief for Plaintiff, p. 7.