**ENGINEERS JOINT WELFARE, PENSION, SUPPLEMENTAL UNEMPLOYMENT BENEFIT AND TRAINING FUNDS, by Robert H. VANDYKE, as Administrator; Central Pension Fund of the International Union of Operating Engineers and Participating Employers, by Frank Gould, as Administrative Manager; and International Union of Operating Engineers Local Union No. 545, by Jack Webb, as Business Manager, Plaintiffs,**

v.

**B.B.L. CONSTRUCTORS, INC., Defendant.**

No. 92–CV–363.

United States District Court, N.D. New York.

June 24, 1993.

Blitman & King, Syracuse, NY, for plaintiffs; Jennifer A. Clark, of counsel.

Ali, Pappas, Paltz & Cox, P.C., Syracuse, NY, for defendant; Thomas · P. Givas, of counsel.

### MEMORANDUM DECISION AND ORDER

HURD, United States Magistrate Judge.

On August 10, 1992, U.S. District Court Judge Con. G. Cholakis issued an Order referring the above captioned case to this court for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c), Fed.R.Civ.P. 73 with the consent of the parties. Engineers Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds, et al., ("plaintiffs") filed its motion on February 26, 1993, for a Default Judgment pursuant to Fed.R.Civ.P. 55. On April 8, 1993, this court heard oral arguments regarding plaintiffs' motion. The court reserved decision at that time.

### FACTS

B.B.L. Constructors, Inc. ("defendant") was a party to a collective bargaining agreement between Labor Relations Division, Central New York Region, Associated General Contractors of America, New York State Chapter, Inc., and Certain Independent Employers and International Union of Operating Engineers–Local 545 ("Agreement"). Pursuant to the Agreement, the defendant was obliged to remit certain fringe benefit contributions and deductions to the plaintiffs. These contributions and deductions were to be remitted for all hours worked by employees who were covered by the Agreement.

Pursuant to the Agreement, the amount of contributions that defendant should remit to the Welfare Fund, the Pension Fund, the Supplemental Unemployment Benefit Fund, the Training Fund and the Central Pension Fund was determined by multiplying the total number of hours worked by its employees by the contribution rates for each multi-employer plan, as set forth in the Agreement. The amount of dues deductions defendant should remit was determined by multiplying the amount of gross wages of the defendant's employees by the percentage rate set forth in the Agreement. Defendant should also contribute to the Voluntary Political Action Fund ("V.P.A.F.") of the unions. The amount of V.P.A.F. monies was determined by multiplying the total number of hours worked by employees of the defendant by the V.P.A.F. rate set forth in the Agreement.

The Agreement, the Agreements and Declarations of Trust of the Engineers Joint Welfare–Pension–Supplemental Unemployment Benefit and Training Funds, the Engineers Joint Benefit Funds Collections Policy, the Agreement and Declaration of Trust of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, and 29 U.S.C. § 1132(g)(2)(B) obligated the defendant, if it was delinquent in remitting contributions and deductions, to pay interest and/or liquidated damages, plus the cost and fees of collection and attorney's fees.

Plaintiffs allege that during the periods September 1991, through November 1991, and May 1992, through September 1992, defendant failed to remit fringe benefit contri-

butions and deductions. To be more specific, they allege that defendant owes $11,455.14 for the period ending November 1991, and $14,263.97 for the period ending September 1992, (totalling $25,719.11), minus a credit of $4,866.84; for a TOTAL of $20,852.27. In addition, plaintiffs allege that they are due $4,813.51 in interest, $5,671.81 in liquidated damages and $5,188.59 in attorney's fees (plus $771.00 for submitting a response to defendant's reply affidavit); for a GRAND TOTAL of $37,297.18.

Defendant's Reply Affidavit does not dispute liability for failing to remit fringe benefit contributions and deductions, the amounts due for interest and liquidated damages, or the award of attorney's fees. However, defendant, through its president, Blase Larroca, does dispute the $20,852.27 figure as being the amount due for fringe benefit contributions and deductions. Defendant claims that this figure should to be $17,642.00 for a difference of $3,210.27. Specifically, defendant claims that as January 1, 1992, the amount due was $9,425.82, and on September 19, 1992, the amount due and payable was $13,083.02; for a TOTAL of $22,508.84. From this total, defendant alleges that it is due the credit of $4,866.84; for a TOTAL of $17,642.00. Defendant alleges that this difference is attributable to the fact that plaintiffs reduced a lien claim on one project by $3,454.76, and then failed to include that reduction in their calculations, thus overstating the figure by $3,210.27.

In their reply affidavit, plaintiffs allege that defendant received its credit for the reduction of the Route 481 mechanic's lien of $3,454.76 (above), which it claims was included in the $4,866.84 credit from the $25,719.11 figure above. They allege that the $3,210.27 difference is due to the fact that after commencement of the lawsuit and after a review of certified payroll records submitted by defendant, the Assistant Plan Administrator, Daniel P. Harrigan ("Assistant Plan Administrator"), determined that an additional $2,864.86 in fringe benefit contributions was due for the period September 1991, through November 1991, on behalf of employees who

were not included on his original Audit Recap Sheet. He also determined that defendant was not required to remit fringe benefit contributions and deductions on behalf of some of the hours shown on his original Audit Recap Sheet. Therefore, the amount due for this same period was reduced by $835.54. Based on the foregoing, defendant allegedly owes $11,455.14 ($9,425.82 + $2,864.86 − $835.54) not $9,425.82 in fringe benefit contributions and deductions for this period.

Additionally, plaintiffs allege that based upon pay stubs submitted by defendant's employees they are due $14,263.97, not $13,083.02 in fringe benefit contributions and deductions for the period May 1992, through September 1992. In the end, plaintiffs allege that defendant still owes a TOTAL of $20,852.27 [ ($9,425.82 + $2,864.86 − $835.54) + $14,263.97 − $4,866.84] in fringe benefit contributions and deductions. Therefore, the only issue currently before this court on the plaintiffs' motion for default judgment is whether plaintiffs are due the additional $3,210.27 ($20,852.27 − $17,642.00) in fringe benefit contributions and deductions.

### DISCUSSION

 As an initial matter, this court notes that an entry of default is a prerequisite to a default judgment under Rule 55(b). *Lee v. Brotherhood of Maintenance of Way Employees*, 139 F.R.D. 376, 380 (D.Minn. 1991). The grant of a party's motion for entry of a default judgment lies within the sound discretion of the trial court. *Georgia Power Project v. Georgia Power Co.*, 409 F.Supp. 332, 336 (N.D.Ga.1975). Entry of default judgment on the issue of liability does not necessarily establish as a fact every imputation in an affidavit which relates to the extent of damages. *Baccaro v. Pisa*, 252 F.Supp. 900, 905 (S.D.N.Y.1966). Regardless, this court finds that an entry of default has been made in this case. When a defendant has failed to plead or otherwise defend an action, as here, the clerk shall enter that party's default under Rule 55(a).

 Moreover, the sanction of judgment by default, although most severe, is within the discretion of the trial judge. *Flaks v. Koegel*, 504 F.2d 702, ·707 (2d Cir.1974). Judgment by default may be entered as follows:

(1) **By the Clerk.** When the plaintiff's claim against a defendant is a sum certain or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant....

(2) **By the Court.** In all other cases the party entitled to a judgment by default shall apply to the court therefore....

Fed.R.Civ.P. 55(b). By virtue of the default, the defendant is deemed to have admitted to the truth of the well-pleaded allegations of the complaint. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993). When considering plaintiffs' Motion for a default judgment, this court finds it significant that defendant failed to file an answer, and did not dispute the merits of plaintiffs' motion in its reply affidavit or at oral argument. Thus, this court grants plaintiffs' motion for a default judgment.

 The remaining question is the amount of monies plaintiffs are properly due.

Under the Employee Retirement Security Act ("ERISA"), plan trustees may collect the unpaid contributions and the actual costs incurred in collecting unpaid contributions.[1] At oral argument, defendant raised concern that plaintiffs should have filed an amended complaint because the amounts requested in their reply affidavit is at variance with those of the complaint. Although appropriate filings are encouraged, this court finds the procedural formality of filing an amended complaint in this case to be too rigid.[2] When deciding, this court notes as a policy matter that ERISA's purpose is to secure guaranteed pension *payments* to participants by insuring the honest administration of financing sound plans. *Pompano v. Michael Schiavone & Sons, Inc.*, 680 F.2d 911, 914 (2d Cir.1982), *citing* H.Conf.Rep. No. 93–1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 5038–5190; *cert den.* 459 U.S. 1039, 103 S.Ct. 454, 74 L.Ed.2d 607 (1982).[3]

More important, defendant clearly had notice of the varying amount in plaintiffs' reply affidavit. Defendant timely received a copy of the reply affidavit which claimed additional monies at variance with plaintiffs' complaint and also clearly explained the reasons for the variance. Defendants also appeared before this court where it was again informed that plaintiffs were requesting additional monies.

1. 29 U.S.C. § 1132(g)(2) states:

 In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
 (A) the unpaid contributions,
 (B) interest on the unpaid contributions,
 (C) an amount equal to the greater of—·
 (i) interest on the unpaid contributions, or
 (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
 (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

 (E) such other legal or equitable relief as the court deems appropriate.

 The defendant does not dispute that it owes plaintiffs $4,813.51 in interest and $5,671.81 in liquidated damages. As a result, this court grants plaintiffs' request for reimbursement of these named expenses.

2. The court also notes that the amount at variance is a small and rather insignificant amount.

3. Stated in another way, ERISA is a comprehensive remedial statute enacted to protect "the interests of participants in employee benefit plans and their beneficiaries...." *Marshall v. Snyder*, 430 F.Supp. 1224, 1231 (E.D.N.Y.1977), *citing* 29 U.S.C. § 1001(b); *aff'd in part and remanded in part*, 572 F.2d 894 (2nd Cir.1978).

Therefore, "the amended [motion for] default judgment in the case at hand satisfies the notice principles Rule 54(c) seeks to protect." *Fustok v. Conticommodity Services, Inc.*, 122 F.R.D. 151, 157 (S.D.N.Y. 1988) (*citing Sylvan Beach v. Koch*, 140 F.2d 852, 862 (8th Cir.1944) (rule assures "essentials of due process and of fair play")).

 Next, defendant raised an objection at oral argument to the amount of attorney's fees requested by plaintiffs. Under § 1132(g)(1), attorney fees may be awarded in an ERISA case. The decision is based on five factors: (1) the offending (losing) party's bad faith or culpability; (2) whether the action was filed to confer a benefit on plan members generally; (3) whether an award of fees would deter others from acting similarly under like circumstances; (4) the relative merits of the party's position; and (5) the ability of the offending party to pay the fees and costs. *Ford v. New York Cent. Teamsters Pension Fund*, 506 F.Supp. 180, 183 (W.D.N.Y.1980), *aff'd*, 642 F.2d 664 (2d Cir. 1981); *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987). This court finds that the amount of fees requested by plaintiffs in the amount of $5,959.59 to meet these criteria and to be reasonable.[4] Given the legislative purpose of ERISA, it is significant that defendant does not dispute liability, but the precise amount of fringe benefit contributions and deductions to be remitted. This court is compelled to award the attorney fees in order to deter, not only defendant, but others, from acting similarly under like circumstances in the future.

 Finally, this court must decide whether plaintiffs are due $17,642.00 as defendant alleges, or $20,852.27 as plaintiffs allege, in total (unremitted) fringe benefit contributions and deductions for the periods September 1991, through November 1991, and May 1992, through September 1992.

This court finds the Assistant Plan Administrator's explanation for the variance more than persuasive. In his affidavit, he explained that the variance was inadvertent and caused by corrections he found necessary after commencement of the lawsuit and after a review of certified payroll records submitted by defendant. Defendant does not dispute the Assistant Plan Administrator's explanation. This court finds his explanation determinative, and that the plaintiffs did give the defendant the benefit of the $3,454.76 mechanic lien within the $4,866.21 credit. The plaintiffs are hereby awarded $20,852.27 in total (unremitted) fringe benefit contributions and deductions for the periods described.

Therefore, it is, ORDERED that

1. The entry of default judgment and judgment of default against the defendant B.B.L. Constructors, Inc., is hereby granted;

2. Defendant B.B.L. Constructors, Inc., pay a total of $20,852.27 in (unremitted) fringe benefit contributions and deductions; $4,813.51 in interest; $5,671.81 in liquidated damages; and $5,959.59 in attorney fees, for a grand total of $37,297.18 to plaintiffs; and

3. The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

---

4. *See generally, CeFali v. Buffalo Brass Co.*, 748 F.Supp. 1011 (W.D.N.Y.1990) (ERISA action– $150.00 per hour for attorney fees were reasonable); *Onondaga County Laborers Health, Welfare, Pension, Annuity and Training Funds v. Sal Masonry Contractors, Inc.*, 1992 WL 75051, 9–0466 (N.D.N.Y. April 4, 1992) (ERISA action– $137.00 per hour for attorney fees was reasonable).