Timothy **RICE** et al., Plaintiffs-Appellees,

v.

**AMERICAN PROGRAM BUREAU** et al.,
Defendants-Appellants.

Nos. 1032, 1041, Dockets 71–1483, 71–1538.

United States Court of Appeals,
Second Circuit.

Argued June 1, 1971.

Decided July 8, 1971.

Eastman & Eastman, New York City, for plaintiffs-appellees; Robert J. Osterberg, New York City, of counsel.

Poletti, Freidin, Prashker, Feldman & Gartner, New York City, for defendants-appellants; Robert L. Carter, New York City, of counsel.

Before CLARK, Associate Justice,* SMITH, Circuit Judge, and ZAVATT,** District Judge.

CLARK, Associate Justice:

This appeal tests the validity of a preliminary injunction enjoining alleged infringements of the copyrights on the rock opera entitled *Jesus Christ Superstar* and its separate musical compositions. The American Rock Opera Company (AROC) and its booking agent, American Program Bureau (APB) and Robert Walker,

---

* Associate Justice, United States Supreme Court (Ret.), sitting by designation.

** District Judge, Eastern District of New York, sitting by designation.

the latter's president, defendants-appellants, have been enjoined from advertising the presentation, presenting or performing the copyrighted opera *Jesus Christ Superstar*, save for "the singing of not more than two (2) of the individual musical compositions which have been separately copyrighted as musical compositions * * * or not more than two (2) other individual songs from the opera during any one concert."

Timothy Rice and Andrew Lloyd Webber, the composers of the opera, Leeds Music, Limited (Leeds), the publishers of it, the Robert Stigwood Group, Limited (Stigwood), who are licensed to perform it, and MCA Records, Inc., which has recorded it, have each filed cross appeals claiming that the appellants have no license and should be prohibited from presenting the opera in any form.

We have concluded that the injunction should be modified and that appellants be enjoined from presenting (1) the opera in its entirety; (2) the songs or excerpts therefrom when accompanied by either words, pantomime, dance or visual representation of the work from which the music is taken; and (3) fragments or instrumental selections when accompanied by words, dialogue, costumes, dramatic action or visual representation (such as motion picture) of the work of which the music forms a part.

I.

The rock opera *Jesus Christ Superstar* presents the last seven days in the life of Christ, the lyrics and libretto being composed by Rice and the music by Webber. Rice and Webber secured copyrights on each of the twenty-two compositions of the opera [1] and assigned them to Leeds, save and except "King Herod's Song." The performance and dramatic rights in the opera were also retained by Rice and Webber, who thereafter granted an exclusive license to Stigwood to perform the opera on the professional stage and a non-exclusive one at repertory concerts. Stigwood intends to perform the opera in New York City, London and elsewhere.

Leeds entered into the customary membership agreement with the American Society of Composers, Authors and Publishers (ASCAP). Pursuant to the membership agreement ASCAP provides a system for collecting royalties, and is given the right to license non-dramatic performances of the musical works of its members defined as:

> 1(b) "The non-exclusive right of public performance of the separate numbers, songs, fragments or arrangements, melodies or selections forming part or parts of musical plays and dramatico-musical compositions, the *Owner* reserving and excepting from this grant the right of *performance* of musical plays and dramatico-musical compositions *in their entirety, or any part* of such plays or dramatico-musical compositions on the *legitimate stage*." (Emphasis added.)

Leeds granted a license to Decca Records, a division of MCA Records, Inc., in November 1970, allowing it to release an album containing the opera. This album, carrying a cover with an original copyrighted design, has been highly successful commercially and has been widely circulated.

Early in 1971 appellant AROC applied to Leeds for a license to perform the songs in question but it was refused. APB—the booking agent of AROC—then requested ASCAP to issue it a concert promoter's license with regard to the collective musical works of all ASCAP members, known in the trade as the ASCAP repertoire. It also inquired whether it

---

1. The titles include "Heaven on Their Minds," "What's the Buzz/Strange Things Mystifying," "Everything is Alright," "This Jesus Must Die," "Hosanna," "Simon Zealots," "Poor Jerusalem," "Pilate's Dream," "The Temple," "I Don't Know how to Love Him," "Damned for all Time/Blood Money," "The Last Supper," "Gethsemane," "The Arrest," "Peter's Denial," "Pilate and Christ," "Juda's Death," "Trial Before Pilate," "Superstar," "Crucifixion," "King Herod's Song" and "John Nineteen Forty One."

might secure a license to perform *Jesus Christ Superstar*. ASCAP's Boston office replied, advising that ASCAP could not issue a license for performance of compositions from the opera "because the compositions are dramatico-musical ones to which the ASCAP license does not extend." This conclusion was later confirmed by ASCAP's New York office. However, on March 4, 1971, ASCAP entered into a license agreement with APB covering "non-dramatic renditions of the separate musical compositions co�runyright-ed by members of the Society." Paragraph 3 of the standard license provided:

"3. This license shall not extend to or be deemed to include.

(a) Oratorios, choral, operatic or dramatico-musical works (including plays with music, revues and ballets) in their entirety or songs or other excerpts from operas or musical plays accompanied either by words, pantomime, dance or visual representation of the work from which the music is taken; but fragments or instrumental selections from such works may be instrumentally rendered without words, dialogue, costume, accompanying dramatic action or scenic accessory, and unaccompanied by any stage action or visual representation (by motion picture or otherwise) of the work of which such music forms a part.

(b) Any work (or part thereof) whereof the stage presentation and singing rights are reserved."

On March 15, 1971 APB advised ASCAP, through an agent, that it desired to perform the music from the album *Jesus Christ Superstar*. ASCAP requested advice as to the nature of the intended performances and was advised that APB intended to perform "nondramatic performances of excerpts of the published songs before college audiences." ASCAP replied that performances from *Jesus Christ Superstar* "may indeed be a dramatic performance" and were therefore, not included in the ASCAP license. The latter concluded: "In any event the ASCAP license does not authorize an advertisement such as yours, which gives the impression that *Jesus Christ Superstar* was being performed in whole or in part." Despite this warning AROC performed *Jesus Christ Superstar* in its entirety at St. Louis on April 13th.[2] In addition, the record shows that it has contracted to perform the opera in twelve other cities and in its promotional materials utilized the copyrighted cover design of the Decca Record album. The Court, after a hearing, issued a preliminary injunction enjoining appellants:

"(1) from presenting or performing the opera 'Jesus Christ Superstar' or any portions thereof; (2) from advertising or promoting any such performances; and (3) from printing and using the design of MCA Records, Inc. which is contained on the Decca record album of 'Jesus Christ Superstar' * * *."

Thereafter appellants sought to modify the preliminary injunction by eliminating in Clause (1) the words "or any portions thereof," thereby permitting appellants to perform individual songs from the

---

2. Two other cases directly involving the presentation of the opera *Jesus Christ Superstar* have come to our notice. (1) No. 71–C–261, The Robert Stigwood Group, Limited, et al. v. Superstar Productions, Limited, filed in the United States District Court for the Eastern District of Wisconsin. On June 7th, 1971 the District Court refused the issuance of a preliminary injunction, apparently based on procedural grounds and a finding of improbability of success upon the merits. Two performances, including some 26 selections from the opera, were given at the Milwaukee County War Memorial. Members of AROC were among the cast. (2) No. 71 Civ. 1047–71, The Robert Stigwood Group Limited et al. v. Superstar Productions et al. in the United States District Court for the District of Columbia. The case was filed May 27, 1971 and was later dismissed when the presentation of the opera at Constitution Hall was cancelled. The production was being billed as "Superstars" and on the admission ticket was the legend "American Rock Opera Co. performing music from 'Jesus Christ Superstar.'"

opera in a non-dramatic concert form. At the hearing on appellant's motion to modify the preliminary injunction, appellees argued that they had specifically reserved the stage presentation and singing rights in the musical compositions from the opera. In addition to the reservation clause of the ASCAP membership agreement, appellants introduced letters dated March 9 and May 17, 1971 from Leeds Music to ASCAP purporting to confirm a "telephone conversation" and "prior instructions" that Leeds reserves the singing and stage presentation rights to the opera and "each composition contained therein," and that ASCAP may not authorize performances of the opera "or excerpts thereof."

The District Court held that the agreement between ASCAP and Leeds was the usual and customary membership agreement pursuant to which ASCAP has the right to license the non-dramatic performance of the separate musical renditions. It also found that ASCAP had agreed with APB to grant it a license on the "non-dramatic renditions of the separate musical compositions copyrighted by members of the Society," and that this included "the singing of a few songs without any other words or gestures from a dramatico-musical work along with an entire program of other works or the playing of a medley of songs during an intermission in such a program," citing April Productions v. Strand Enterprises, 221 F.2d 292 (CA 2, 1955). The Court rejected Leeds' contention that it had also specifically reserved non-dramatic performances of individual works, holding that the letters of March 9 and May 17, 1971, attempted a prohibited "withdrawal" from the contract with ASCAP after Leeds had already granted ASCAP the right to license separate songs, and ASCAP had licensed to give non-dramatic performances of individual compositions. It noted that the license agreement between ASCAP and Leeds Music authorized withdrawal on three months' notice conditioned on Leeds' "agreeing that [its] resignation shall be subject to any rights or obliga-

tions existing between ASCAP and its licensees under then existing licenses * * *." We agree with this conclusion.

### II.

The case is here on the granting of a preliminary injunction pursuant to § 112 of the Copyright Act, 17 U.S.C. § 112. The issuance of such a writ is, of course, discretionary with the trial court and ordinarily will not be disturbed on appeal unless a clear abuse of discretion is shown. Ideal Toy Corporation v. Fab-Lu, Ltd., 360 F.2d 1021 (CA 2, 1966); Joshua Meier Co. v. Albany Novelty Mfg. Co., 236 F.2d 144 (CA 2, 1956); Nimmer, Copyright, § 157.1 (1970). It is likewise well settled that when a prima facie case is made out a preliminary injunction should issue without the showing of irreparable injury, especially in actions such as this involving dramatico-musical works. Rushton v. Vitale, 218 F.2d 434 (CA 2, 1967); Chappell & Co. v. Fields, 210 F. 864 (CA 2, 1914). In American Metropolitan Enterprises of New York, Inc. v. Warner Bros. Records, Inc., 389 F.2d 903, 905 (CA 2, 1968), this Court stated: "A copyright holder in the ordinary case may be presumed to suffer irreparable harm when his right to the exclusive use of the copyrighted material is invaded."

Of course it must be remembered that in cases of this kind, factual issues may develop on trial, that were not present on the preliminary hearing, that may require modification or even a different result: for example, evidence on the meaning of the word "fragments" that is used in both the membership agreement and the ASCAP license; the accepted understanding in the trade of the phrase "dramatico-musical compositions" likewise used in both of these documents; accepted uses of the term "visual representation," etc., in the ASCAP license.

### III. THE SCOPE OF THE LICENSE

ASCAP came into being to aid its members to police the exclusive right granted copyright owners under 17 U.S.C. § 1(e) to perform publicly for profit their musi-

cal compositions. Feeling that they could themselves police and license dramatic plays, musical comedies or operas, ASCAP was only authorized to license non-dramatic performing rights. See Nimmer, *Copyright 1955*, 43 Cal.Law Rev. 791, 798 (1955). As a consequence, members or owners reserved to themselves the right of "performance of musical plays and dramatico-musicals in their entirety" or any part of the same on the legitimate stage. ASCAP, therefore limited the licenses it issued on its repertoire to the "non-dramatic rendition of the separate musical compositions copyrighted by members of the Society." ASCAP included in its license three excluded dramatic categories [§ 3(a)]: (1) the overall work, (2) excerpts when accompanied by words, dance, pantomime, visual representation, and (3) fragments or instrumental selections accompanied by words, costumes, dialogue, scenery, etc. (which are apparently not here involved). These provisions parallel § 1(b) of the member-ASCAP agreement, which reserves to the member the *performance* of "musical plays and dramatico-musical compositions in their entirety" or any part thereof on the *legitimate stage*. Non-dramatic performances of separate numbers, songs, etc. are not reserved. Through these provisions ASCAP only licenses the presentation of the separate songs in its repertoire. This includes the lyrics of the particular *song*; April Productions v. Strand Enterprises, 221 F.2d 292 at 294 (CA 2, 1955) but does not permit the use of words, dance, pantomime or visual representation that might aid in telling the plot of the overall play or opera.

ASCAP receives from the member or owner, the "non-exclusive right of public performance of the separate numbers, songs, fragments or arrangements, melodies or selections" but not "the right of performance of musical plays and dramatico-musical compositions in their entirety"; nor "any part of such

plays or dramatico-musical compositions on the legitimate stage." In short, ASCAP receives the right to license the separate songs, including their lyrics, but not the opera in its entirety or any part of it on the legitimate stage. In keeping with this clear restriction ASCAP has limited its license to "non-dramatic rendition of the separate musical compositions, including the lyrics of the songs, copyrighted by its members but *not* the opera "in its entirety"; nor the "songs or other excerpts" from it when "accompanied by words, pantomime, dance or visual representation of the work from which the music is taken"; nor "fragments or instrumental selections from such works" when "accompanied by words, dialogue, costume * * * or scenic accessory, stage action or visual representation * * * of the work of which the music forms a part." The General Counsel of ASCAP has himself characterized non-dramatic performances, as "renditions of a song * * * without dialogue, scenery or costumes." [3] Applying these criteria to the facts found by the District Court here, we conclude that appellants cannot perform the overall opera *Jesus Christ Superstar* nor advertise that their program consists of that opera or any adaptation thereof. Appellants can present separate songs, fragments of songs, or excerpts from the opera including the lyrics in the original works but cannot accompany such songs or excerpts with words, pantomime, dance, costumes, or scenery that will lend a visual representation of the work from which the music is taken. The record indicates that no instrumental selections are included in the opera. If there are such selections, they may be presented without words, dialogue, costume, stage action, dramatic action, scenic accessory or visual representation (motion picture or otherwise) of the work of which such music forms a part.

The appellees urge that ASCAP's license on its face establishes no right in appellants to perform any of the musical

3. Finkelstein, The Composer and the Public Interest—Regulation of Performing Right Societies, 19 Law & Contemp.Prob. 275, 283 n. 32 (1954).

compositions included in the opera. We do not so read the license. It is true that it does not extend to "dramatico-musical works" but that begs the question before us, i. e. does the presentation of the separate musical compositions of the opera without more—as authorized by the license—constitute a "dramatico-musical" presentation of the work? We had previous occasion to interpret the ASCAP license agreement in *April Productions, supra.* There a nightclub, the Harem, put on an extravaganza in ten scenes twice nightly. The title of the show was "The One Thousand and Second Night" and some of the scenes developed this theme. The ninth scene was "Ben Yost and His Royal Guardsmen." They sang medleys from *The Student Prince* that contributed nothing to the overall plot of the show. It was, as the court held, an "entr' acte." This Court found that this presentation was non-dramatic. It is true that *April* is not on all fours with the instant case, for the presentation of all of the songs from the opera *Jesus Christ Superstar* without costumes, words, or scenery, but in sequence could arguably develop the overall plot of the opera, and thus it might possibly be "dramatic" or be a presentation of the opera in its "entirety." But we have no proof of this here and until there is proof, we cannot so hold. Each of the songs of the opera are separately copyrighted, and these are the "rights" which ASCAP received from the member or owner. At this preliminary stage when the proof is on the papers alone, it cannot be concluded that the mere singing of the songs—without more—would fall within the license's excluded category. Under appellees' interpretation, the license granted appellants nothing; we are not persuaded that the ASCAP membership has engaged in such a useless exercise.

## IV.

The preliminary injunction is modified and it is ordered that appellants be enjoined from performing (1) the overall opera *Jesus Christ Superstar*, (2) songs or excerpts from the opera (accompanied by lyrics in the original work) accompanied either by words, pantomime, dance or visual representation of the work from which the music is taken, and (3) fragments of songs or instrumental selections (unaccompanied by lyrics in the original work) except insofar as they are instrumentally rendered without words, dialogue, costume, accompanying dramatic action or scenic accessory and are unaccompanied by any stage action or visual representation (by motion picture or otherwise) of the work of which such music forms a part; and from advertising or in any way representing any presentation as being from *Jesus Christ Superstar* or any song, instrumental selection or excerpt as taken therefrom in whole or in part.

The judgment below, as modified, is affirmed.

J. JOSEPH, SMITH, Circuit Judge (dissenting):

I respectfully dissent; I would affirm the judgment as amended.