The ROBERT STIGWOOD GROUP LIMITED et al., Plaintiffs-Appellants-Cross-Appellees,

v.

John T. O'REILLY et al., Defendants-Appellees-Cross-Appellants.

TRACK MUSIC, INC., et al., Plaintiffs-Appellants-Cross-Appellees,

v.

CONTEMPORARY MISSION, INC., et al., Defendants-Appellees-Cross-Appellants.

Nos. 45, 46, 215, 850, Dockets 75–7076, 75–7077, 75–7090, 75–7091.

United States Court of Appeals, Second Circuit.

Argued Oct. 14, 1975.

Decided Jan. 19, 1976.

Robert C. Osterberg, New York City (Abeles Clark & Osterberg, John L. Eastman and Ina Lea Meibach, New York City, of counsel), for plaintiffs-appellants-cross-appellees.

William D. O'Reilly, Windham, N. H., for defendants-appellees-cross-appellants.

Before KAUFMAN, Chief Judge, and SMITH and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

"JESUS CHRIST SUPERSTAR" ("SUPERSTAR"), the successful rock opera, covered by copyrights, was publicly performed by the defendants without permission. They have been found to be infringers. We are the first appellate court to be asked to decide how statutory damages, 17 U.S.C. § 101(b), are to be assessed when there have been multiple unauthorized performances of an opera, several copyrights of which were "infringed" at each performance.[1] The consolidated appeals are from two amended final judgments entered in the United States District Court for the District of Connecticut, Hon. Robert C. Zampano, *Judge.*

### No. 75–7076

The joint plaintiffs, The Robert Stigwood Group Limited ("Stigwood"), Leeds Music Limited ("Leeds") and Leeds Music Corporation, own the United States copyrights in SUPERSTAR, and in separate musical compositions therein, as well as the performing stage rights. See *Robert Stigwood Group Limited v. Sperber,* 457 F.2d 50, 51–52 (2 Cir. 1972). The defendants are Roman Catholic priests who performed SUPERSTAR without obtaining a license either from the plaintiffs or from the American Society of Composers, Authors and Publishers (ASCAP). The District Court found that these performances infringed the plaintiffs' copyrights,[2] and issued a preliminary injunction enjoining the defendants from presenting any future performances of SUPERSTAR. *Robert Stigwood Group Limited v. O'Reilly,* 346 F.Supp. 376 (D.Conn.1972).[3] We affirmed this decision by unpublished order. No. 72–1826 (2 Cir. May 30, 1973).

---

1. We must similarly determine damages on the other appeal consolidated here involving infringement by the defendants of the rock opera "TOMMY." *Track Music, Inc. v. Contemporary Mission, Inc.,* Docket No. 75–7077.

2. The defendants' infringements were not the only infringements of the "SUPERSTAR"

copyrights. See, *e. g.,* cases collected in *Robert Stigwood Group Limited v. Sperber, supra,* 457 F.2d at 51 n. 1.

3. The implied Robin Hood defense as justification for taking from the rich to give to the poor has not been accepted. And this court has already held that the contention that the

On November 13, 1974, the District Court granted plaintiffs' motion for summary judgment, and awarded the plaintiffs $22,800 in damages and $4700 for attorneys' fees.

### No. 75–7077

The defendants were also charged in a separate action with infringing the copyrights of another rock opera, "TOMMY." The joint plaintiffs, Track Music, Inc., Fabulous Music Ltd. and New Ikon, Ltd., are the copyright proprietors of the separate Class (e) copyrights in the words and music of the twenty-six individual musical selections of which TOMMY is comprised, as well as of a Class (d) copyright for the "dramatico-musical work" itself.[4] Plaintiff Track Music, Inc. owns the copyright on the entire work and is possessed of the rights for the United States under the copyrights in the individual musical selections. Upon discovery of defendants' uses of TOMMY in two unauthorized performances, plaintiffs brought an action in the District Court for Connecticut for copyright infringement by unauthorized performances and for unfair competition. The TOMMY action, like the SUPERSTAR action, was assigned to Judge Zampano who issued a preliminary injunction on July 26, 1972, enjoining unauthorized performances of TOMMY and of its twenty-seven separately copyrighted works. We affirmed. No. 72–1843 (2 Cir. May 30, 1973).

On a motion by the plaintiffs for summary judgment, the District Court, based on evidence at the hearing on the preliminary injunction and on affidavits, awarded damages of $2700 and counsel fees of $800.[5]

Neither side appeals from the conclusion that the defendants are liable. Each party appeals from the judgments on damages.[6] To avoid confusion, we shall discuss the damage issue in SUPERSTAR, holding in abeyance to the end of the opinion the application of the rules thus formulated to TOMMY.

### "SUPERSTAR"—No. 75–7076

In deciding the damage issue in the SUPERSTAR action, Judge Zampano rejected the defendants' claim that the number of infringing performances may be established only by a trial. Noting that "[t]he defendants concede that they performed the rock opera *at least* 50 times" (emphasis added), he accepted "fifty" "as [the] baseline figure for the computation of damages." The court then reduced the "baseline figure of 50" to thirty-eight by excluding twelve performances given in Canada. The court held that "each one of the defendants' performances of the plaintiffs' rock opera constituted a separate infringing transaction." The court also found that "[a]t each of the performances, there were six copyrights owned by the plaintiffs which the defendants wilfully and unlawfully infringed." The court then determined that since the plaintiffs had decided not to seek actual damages but to request their due "in lieu of actual

---

performances fall within the religious works exemption of 17 U.S.C. § 104 is frivolous. The question of damages comes to us at this stage, therefore, free from any possible differentiation based on the religious activities of the defendants. We say this because our rulings on the proper measure of damages should be taken to apply to any infringing producer with the same degree of wilful infringing activity.

**4.** The classifications of works for purposes of registration are set forth in 17 U.S.C. § 5.

**5.** The Court found that in June 1972 the defendants had sought a license to perform TOMMY, which request was denied, that the defendants were notified in writing of plaintiffs' infringement claims in early July 1972, that the defendants performed the rock opera

TOMMY thereafter on July 15, 1972, at Richmond, Virginia, and on July 17, 1972, at Roanoke, Virginia, without authorization, and that the defendants copied verbatim the lyrics and score, the sequence of songs, and the overall pattern of plaintiffs' rock opera. The District Court also found that each of the performances was conducted pursuant to a separately negotiated contract with the owner of the theater in question, that local advertising was utilized in both locations, and that each of the infringing performances was an unrelated, distinct business transaction.

**6.** The awards of counsel fees are not contested on appeal.

damages and profits" under the applicable provisions of the Copyright Law, 17 U.S.C. § 101(b),[7] "an award should reflect 'such damages as to the court shall appear to be just.' Cf. *Davis v. E. I. DuPont de Nemours & Company*, [249 F.Supp. 329 (S.D.N.Y.1966)]; *Baccaro v. Pisa*, [252 F.Supp. 900 (S.D.N.Y.1966)]." The court did not, however, award the statutory minimum of $250 for each infringement provided in 17 U.S.C. § 101(b), but instead determined that "[u]nder all the circumstances of this case, it is the Court's considered opinion that a fair, reasonable, and just award for damages shall be a total of $22,800 for defendants' multiple infringements of plaintiffs' rock opera 'Jesus Christ Superstar.'" The court did not explain how the $22,800 figure was arrived at.[8]

It is clear, however, that it believed that, in awarding "in lieu" damages under the statute, the court was permitted to award what it thought fair, reasonable and equitable without the restraint of the statutory minimum of $250 for each infringement found.

Plaintiffs-appellants contend that the proper formula for "in lieu" damages is rigidly prescribed by § 101(b) and that, in computing damages, the District Court should have (a) found that the defendants performed SUPERSTAR sixty rather than fifty times; (b) included the Canadian performances; (c) treated the performance rights in each of the six copyrights as separately infringed at each performance; and (d) applied the statutory minimum of $250 for each infringement. On this basis, plaintiffs-ap-

---

**7.** 17 U.S.C. § 101(b) provides:

If any person shall infringe the copyright in any work protected under the copyright laws of the United States such person shall be liable:

(b) Damages and profits; amount; other remedies.—To pay to the copyright proprietor such damages as the copyright proprietor may have suffered due to the infringement, as well as all the profits which the infringer shall have made from such infringement, and in proving profits the plaintiff shall be required to prove sales only, and the defendant shall be required to prove every element of cost which he claims, or in lieu of actual damages and profits, such damages as to the court shall appear to be just, and in assessing such damages the court may, in its discretion, allow the amounts as hereinafter stated, but in case of a newspaper reproduction of a copyrighted photograph, such damages shall not exceed the sum of $200 nor be less than the sum of $50, and in the case of the infringement of an undramatized or nondramatic work by means of motion pictures, where the infringer shall show that he was not aware that he was infringing, and that such infringement could not have been reasonably foreseen, such damages shall not exceed the sum of $100; and in the case of an infringement of a copyrighted dramatic or dramatico-musical work by a maker of motion pictures and his agencies for distribution thereof to exhibitors, where such infringer shows that he was not aware that he was infringing a copyrighted work, and that such infringements could not reasonably have been foreseen, the entire sum of such damages recoverable by the copyright proprietor from such

infringing maker and his agencies for the distribution to exhibitors of such infringing motion pictures shall not exceed the sum of $5,000 nor be less than $250, and such damages shall in no other case exceed the sum of $5,000 nor be less than the sum of $250, and shall not be regarded as a penalty. But the foregoing exceptions shall not deprive the copyright proprietor of any other remedy given him under this law, nor shall the limitation as to the amount of recovery apply to infringements occurring after the actual notice to a defendant, either by service of process in a suit or other written notice served upon him.

First. In the case of a painting, statue, or sculpture, $10 for every infringing copy made or sold by or found in the possession of the infringer or his agents or employees;

Second. In the case of any work enumerated in section 5 of this title, except a painting, statue, or sculpture, $1 for every infringing copy made or sold by or found in the possession of the infringer or his agents or employees;

Third. In the case of a lecture, sermon, or address, $50 for every infringing delivery;

Fourth. In the case of a dramatic or dramatico-musical or a choral or orchestral composition, $100 for the first and $50 for every subsequent infringing performance; in the case of other musical compositions $10 for every infringing performance.

**8.** The figure of $22,800 was apparently arrived at by multiplying 38 performances by six copyrights infringed at each, for a total of 228 infringements, and awarding $100 for each violation.

pellants claim damages as follows: at each performance, infringement of the performing rights of six separate copyrights at $250 each, or $1500, times sixty separate performances, for a total of $90,000.

The defendants-appellants on their cross-appeal contend that the total damages that should have been awarded in the SUPERSTAR action aggregate only $3800 instead of the $22,800 actually awarded. Their contentions are that (a) the Canadian performances are not infringements of the American copyrights; and (2) courts are not compelled, under the provisions of § 101(b), simply because multiple infringements are involved, to award more than they determine to be reasonable and just. They apparently arrive at the suggested figure of $3800 by treating each of thirty-eight performances as an "infringing performance" with a recovery of $100 per performance.

The questions for decision are: (1) How many performances were given by the defendants and was the number undisputed for purposes of summary judgment? (2) Should the twelve Canadian performances be treated as infringements of United States copyrights and performing rights thereunder? (3) Was each infringing performance in the circumstances a separate infringement for the purpose of applying § 101(b)? (4) When a dramatico-musical work is covered by six separate copyrights, is an infringement by a single performance, which infringes each of the copyrights at the same time, a single infringement or six separate infringements?

### 1.

On their motion for a preliminary injunction, plaintiffs introduced evidence showing that the defendants had given at least fifty-eight performances, and by later affidavit they showed sixty performances.

■ In plaintiffs' "Statement of Facts Pursuant to Local Rule 10(a)3 as to Which There Is No Genuine Issue to Be Tried" they averred, supported by affidavits, that "[d]efendants performed Jesus Christ Superstar on at least sixty separate occasions without any authorization, utilizing the copyrighted material protected by the six copyrights therein." The defendants did not rebut by affidavit that there had been at least sixty performances. The undisputed averment supports summary judgment for the plaintiffs on the basis of sixty rather than fifty performances. We hold that the District Court erred in taking "the baseline figure of 50" simply because *that* figure had been conceded by the defendants.

### 2.

It is agreed that there were twelve Canadian performances by the defendants, which Judge Zampano excluded in his calculations. The plaintiffs contend that the twelve performances in Canada should not have been excluded. They argue that in each instance the defendants assembled and arranged in the United States all the necessary elements for the performances in Canada, and then simply travelled to Canada to complete the performances. They urge that the acts in the United States constituted an "integral part of the Canadian performances" and that the defendants should, therefore, be made to respond in damages. They rely on *Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 52 (2 Cir. 1939), *aff'd*, 309 U.S. 390, 60 S.Ct. 681, 84 L.Ed. 825 (1940), and *Famous Music Corp. v. Seeco Records, Inc.*, 201 F.Supp. 560, 568–69 (S.D.N.Y.1961). Their reliance is misplaced. In *Sheldon* the defendants made infringing negatives of the motion picture in the United States and thereafter exhibited the motion picture abroad. Judge Learned Hand did not hold that the manufacture of the negatives in the United States was an integral part of the exhibition abroad. He held, rather, that "exhibition is not the only act forbidden by the Copyright Act," that "negatives were 'records' from which the work could be 'reproduced', and [that] it was a tort to

make them in this country."[9] Judge Hand relied on § 1(d) of the Copyright Act, 17 U.S.C. § 1(d),[10] rather than on § 101.

In *Famous Music Corp., supra,* the defendant shipped tape recordings, made by him in the United States, containing renditions of plaintiffs' copyrighted musical compositions to persons in foreign countries where they were used to manufacture phonograph records. Judge Levet, in assessing a compulsory royalty, relied upon 17 U.S.C. § 101(e), which makes "unauthorized manufacture" of such tapes an infringement of a musical copyright.

■ The steps taken by the defendants preliminary to the Canadian performances were certainly not the "manufacture" of anything, nor were the performances "records" from which the work could be "reproduced." It is only when the type of infringement permits further reproduction abroad that its exploitation abroad becomes the subject of a constructive trust. See 2 *Nimmer on Copyright* § 156. Judge Zampano properly excluded the Canadian performances. Copyright laws do not have extraterritorial operation. *Capitol Records, Inc. v. Mercury Records Corp.,* 221 F.2d 657, 662 (2 Cir. 1955); *American Code Co. v. Bensinger,* 282 F. 829, 833 (2 Cir. 1922); *Nimmer, supra,* §§ 65.61, 156. The Canadian performances, while they may have been torts in Canada, were not torts here.

### 3.

There are three ways of getting damages for copyright infringement under

§ 101: (1) actual damages to the copyright proprietor; (2) profits which the infringer has made from such infringement; or (3) "in lieu of actual damages and profits, such damages as to the court shall appear to be just . . . and such damages shall [not] exceed the sum of $5,000 nor be less than the sum of $250, and shall not be regarded as a penalty."

■ There is evidence supplied by the defendants that the gross ticket sales for performances subsequent to December 1, 1971 amounted to approximately $300,000, and that the gross receipts by the Contemporary Mission, operated by the defendants, were approximately $220,000. The net proceeds to the mission ran between 60 and 65% of the gross receipts. The plaintiffs elected not to pursue the defendants for their *profits.* They elected to ask for statutory damages under § 101(b), which prescribes a minimum and a maximum recovery. That was their privilege, since the record did not establish the defendants' actual profits or the plaintiffs' damages. *F. W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 234, 73 S.Ct. 222, 97 L.Ed. 276 (1952).[11]

The question is further complicated in this unreadable statute, with its "nearly impenetrable provisions for 'in lieu' damages,"[12] so aptly described by Judge Feinberg as "an ambiguous hodgepodge of improvisation," *Davis v. E. I. DuPont de Nemours & Co.,* 249 F.Supp. 329, 331 (S.D.N.Y.1966), by the juxtaposition of a statutory minimum of $250 and a statutory maximum of $5,000 for infringement with a further statutory provision setting forth a schedule of damages "[i]n

---

**9.** The plaintiffs thus acquired an equitable interest in the negatives which entitled them to the profits made by the defendants from their exploitation, even when the negatives were exploited abroad. An ephemeral public performance on the stage is not like a film negative which can be reproduced.

**10.** Section 1(d) provides that the exclusive right to make "any transcription or record" belongs to the copyright owner.

**11.** While in part of the opinion in *Contemporary Arts* Justice Jackson writes as if the "in

lieu" statutory damages are merely "permissible," 344 U.S. at 234, 73 S.Ct. at 226, we gather from the tenor of the opinion and its explanation of *Jewell-LaSalle Realty Co. v. Buck,* 283 U.S. 202, 51 S.Ct. 407, 75 L.Ed. 978 (1931), that either where profits are not actually ascertained, or where damages are not proved, "in lieu" statutory minimum damages *must* be awarded. See 2 *Nimmer, supra,* § 154.11.

**12.** B. Kaplan, *An Unhurried View of Copyright* 74 (1967).

the case of a . . . dramatico-musical . . . composition, $100 for the first and $50 for every subsequent infringing performance; in the case of other musical compositions $10 for every infringing performance." 17 U.S.C. § 101(b), ¶ Fourth.

■ While we recognize the statutory obfuscation, the District Court was in error when it determined that it had the power to make an award that would reflect "such damages as to the court shall appear just" without adhering to the statutory minimum for each infringement found. It was bound to award the statutory minimum of $250 for each infringement that was separate. That much we think was early decided by the Supreme Court in *L. A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100, 39 S.Ct. 194, 63 L.Ed. 499 (1919), and in *Jewell-LaSalle Realty Co. v. Buck*, 283 U.S. 202, 51 S.Ct. 407, 75 L.Ed. 978 (1931); see *Burndy Engineering Co. v. Sheldon Service Corp.*, 127 F.2d 661 (2 Cir. 1942); *Universal Statuary Corp. v. Gaines*, 310 F.2d 647 (5 Cir. 1962); *Shapiro, Bernstein & Co. v. 4636 S. Vermont Ave., Inc.*, 367 F.2d 236, 240 (9 Cir. 1966).

The question then becomes: What is a single infringement mandating a $250 minimum and permitting a $5,000 maximum in the case of dramatic performances? The Supreme Court gave only a partial answer in *L. A. Westermann Co. v. Dispatch Printing Co., supra*. There the plaintiff designed and produced pictorial illustrations of styles in women's apparel, each of which was separately copyrighted. The plaintiff gave an exclusive license for their exploitation to a store in Columbus, Ohio. The defendant published a daily newspaper and, without authorization, reproduced and published six of the plaintiff's copyrighted illustrations. They were published separately, each in a distinct issue. Five were published once and the other one twice, the illustrations in each case being used in an advertisement by a competitor of the licensee. The Court determined that each of the six copyrights was separately infringed. It went on to find that each *advertisement* was a separate infringement, noting that the two advertisements containing the same illustration were inserted by different advertisers and were separated by an interval of twenty-six days. The Court reasoned that each advertiser was an independent infringer and that by publishing their advertisements "the defendant [publisher] participated in *their* independent infringements." 249 U.S. at 105, 39 S.Ct. at 195 (emphasis added). The Court explicitly left open the question, however, "[w]hether it would be otherwise if that publication had been merely a continuation or repetition of the first, and what bearing the 'third' and 'fourth' subdivisions of § 25 [now 17 U.S.C. § 101] . . would have on the solution of that question."

In *Jewell-LaSalle Realty Co. v. Buck, supra*, the Court considered the second part of the question left open in *Westermann*. The Court held that the statutory provision for a minimum award of damages in the sum of $250 is not affected by the yardstick provisions of Paragraph Fourth, and that the amounts set forth in Paragraph Fourth are mere guidelines which do not come into play until the statutory minimum of $250 has been awarded.

Several tests have been suggested for distinguishing a single infringement from multiple infringements in applying § 101(b). *Nimmer on Copyright* analyzes the cases in terms of the interval between succeeding publications. If the interval is only a few days the courts will be inclined to consider all such publications as part of a single damage award.[13] On the other hand, "[i]f the interval between succeeding publications is for a substantially longer period then the courts will view each publication as giving rise to a separate claim for at

---

**13.** Professor Nimmer cites as authority various publication cases as well as *Davis v. E. I. DuPont de Nemours & Co., supra* (162 television stations simultaneously broadcasting a network program).

least minimum damages." 2 *Nimmer, supra,* § 154.32, at 689.[14]

Another test would be whether each infringement claimed is a separate transaction, perhaps involving different joint tortfeasors, as in *Westermann,* or diverse business features. See 2 *Nimmer, supra,* § 154.32, at 690–91; *Burndy Engineering Co. v. Sheldon Service Corp., supra.* We take the rule to be that when the components of the infringing activity are heterogenous, the presumption is that each infringing activity is a separate infringement.

The publication cases can have only a limited bearing, however, on the policy question of when infringement of an opera by a number of theatrical performances is a single infringement and when it is a series of infringements. The repetitive infringement of the performing rights in a musical play may be practically continuous, as when six evening and two matinee performances are given each week in the same theater by the same production company. Under the time-test rule, while the second performance on the Tuesday night after the play opened on Monday night might not be a separate infringement, what of the performance three weeks later? The problem is fortunately academic in a general sense, for quick resort to injunction or the service of a notice of infringement will often nip the infringement in the bud, and the performances will cease before the issue becomes acute.

In this case, while injunctive relief was sought and granted, the infringers were nonetheless able to give forty-eight United States performances. These performances were not a single run at a particular theater, as in the hypothetical case noted. Instead, they were a series of disconnected one-night or two-night stands in different cities. Each of the defendants' performances was given pursuant to a separately negotiated agreement made with a specific auditorium, and in conjunction with separately arranged advertising with local newspapers and radio stations. The financial arrangements which defendants made with numerous auditoriums varied in their terms. Thus, if we ask, in each instance, what the components of the several performances were, we find components which are quite heterogenous.

■ We do not conceive any reasonable test that would make of the forty-eight United States performances but a single infringement. The only ground tendered by the defendants is that theirs was a "single tour." We reject that as a ground, for, as we have seen, the tour involved the participation of different tortfeasors (compare *Westermann, supra* ), different locales, different theaters and different financial arrangements. When the defendants had finished one infringing performance they did not rest, but proceeded to another. We are convinced, therefore, that each of the forty-eight performances was a separate infringement. It follows that in lieu of actual damages or profits, the plaintiffs may recover at least the statutory minimum of $250 for each of the forty-eight United States infringements, or $12,000.

Having found that each United States performance was a separate infringement, we have not solved the whole problem, however. For the plaintiffs contend that each performance was a separate infringement of each of six copyrights, not one. The District Court so held, even though it failed to apply the statutory minimum in accordance with that legal conclusion.

■ The six copyrights on which separate infringement is claimed fall into two classes. Three are copyrights of individual songs registered in Class (e) as "musical compositions," and three are registered in Class (d) as dramatico-musical compositions."[15] The three Class (d) copyrights are obviously duplicative

---

**14.** The text cites as authority *Baccaro v. Pisa,* 252 F.Supp. 900 (S.D.N.Y.1966) (a minimum twenty-six day interval between each infringing radio broadcast of a copyrighted musical

composition), as well as a number of "publication" cases.

**15.** In fact, the plaintiffs obtained twenty-two copyrights on separate musical compositions

so far as the protection of performing rights is concerned. These are: 1) "JESUS CHRIST SUPERSTAR, A ROCK OPERA (Musical Excerpts Complete Libretto)," Dec. 21, 1970; 2) "JESUS CHRIST SUPERSTAR, A ROCK OPERA (Libretto)," Feb. 24, 1971 (Additional Words); 3) "JESUS CHRIST SUPERSTAR (Vocal Score)," Apr. 20, 1971.

While the point is not altogether clear, it appears to us that infringement of performing rights of *overlapping* copyrights on substantial parts of the entire work should be considered as a single infringement.

Since we are compelled to interpret an unexpressed statutory policy, it seems sensible to take a middle ground between possibly excessive damages and possibly insufficient damages. Duplicative copyrights in the same category of entire works, registered under Class (d), are like superfluous protective layers. There is only one entire work and, realistically, only one infringement of libretto, score and dramatic continuity. To award statutory damages for each overlapping Class (d) copyright would simply multiply the statutory minimum without any compelling reason of policy, permitting owners of a dramatico-musical composition to multiply statutory damages almost at their whim.[16] For example, since every scene in a drama is protected under a single copyright of the entire work, *Brady v. Daly*, 83 F. 1007, 1010 (2 Cir. 1897), *aff'd*, 175 U.S. 148, 20 S.Ct. 62, 44 L.Ed. 109 (1899); *Herbert v. Shanley Co.*, 222 F. 344, 345 (S.D.N.Y.1915), *aff'd*, 229 F. 340 (2 Cir. 1916), *rev'd on other grounds*, 242 U.S. 591, 37 S.Ct. 232, 61 L.Ed. 513 (1917), it would not be desirable to permit the individual copyrighting of each scene to mandate the collection of minimum statutory dam-

ages on a cumulative basis. And cf. *Schellberg v. Empringham*, 36 F.2d 991, 996–97 (S.D.N.Y.1929).[17]

█ The separate copyrights on the songs stand in somewhat different case. A purpose of the separate registrations of the musical numbers was apparently to protect the plaintiffs' publication rights, as well as their non-dramatic performance rights. The *dramatic* performance of these copyrighted songs was excluded from the general ASCAP license. See *Rice v. American Program Bureau*, 446 F.2d 685, 686 (2 Cir. 1971). The performing rights were granted exclusively to Stigwood. When the defendants gave infringing *dramatic* performances, they infringed upon the *separate* dramatic rights in *each* song *exclusively* given to Stigwood.

While the analogy to the holding in *Westermann, supra*, is less than perfect, the general tenor of the opinion supports our result. Distinction can indeed be made. The separate copyrighted illustrations in *Westermann* were not covered by a composite copyright of all. They were tied together, moreover, not by the copyright owner but by the publisher of the infringements.

The Supreme Court in *Westermann* could not have considered whether the Congress, in drafting § 101(b), had in mind the infringement of a dramatico-musical work containing separate musical compositions which form an integral part of the whole and which are the subject of separate copyrights. Nor would we find enlightenment on our particular set of facts by parsing the statute with a grammarian's eye. A grammatic analysis of a statute as obscurely written as this one often proves either that the grammarian has oversimplified or that the draftsman has been inept.

in SUPERSTAR. See *Rice v. American Program Bureau*, 446 F.2d 685, 686 & n. 1 (2 Cir. 1971).

**16.** We recognize that the District Court for the Southern District of Florida did grant statutory damages to Stigwood from other infringers of SUPERSTAR by multiplying 17 infringing performances of SUPERSTAR by five separate copyrights at $250, making a total of $21,250, without opinion and without discussion. *Rob-*

*ert Stigwood Group Limited v. Miami Jai-Alai, Inc.*, No. 71–1772 (S.D.Fla. June 20, 1972). We do not know which five copyrights, whether Class (d) or (e), or both, were involved.

**17.** "Protection should not go substantially beyond the purposes of protection." Chafee, *Reflections on the Law of Copyright*, 45 Colum.L. Rev. 503, 506 (1945).

Yet, regardless of any doubts we might have if the matter were entirely *res nova*, the Supreme Court in *Westermann* did emphasize that liability attaches in respect of each copyright that is infringed, 249 U.S. at 105, 39 S.Ct. at 195, as did this court in *Burndy Engineering Co. v. Sheldon Service Corp., supra*. We do not believe that the *Westermann* language must be taken literally in every case, however, for the problem now before us was surely not in the contemplation of the Court when Justice Van Devanter wrote. When the copyrights on the songs can live their own copyright life, we take the teaching of *Westermann* to apply. When the particular copyrights on the dramatico-musical composition itself are essentially duplicative, however, we perceive no mandate to thwart what we think is otherwise a sensible construction.

In sum, the District Court is *required* to recognize the infringements of one basic Class (d) copyright and three Class (e) copyrights at each of forty-eight performances, and to apply the statutory minimum of $250 to each infringement. The District Court is directed, therefore, to enter judgment for $48,000 as a minimum award of damages (4 copyrights x $250 x 48 performances), or such greater sum within the limitations of 17 U.S.C. § 101(b) "as to the court shall appear to be just."

### "TOMMY"—No. 75–7077

There were *two* infringing performances of TOMMY in two different cities under circumstances that made each performance a separate infringement. It is claimed that each performance infringed twenty-six separate copyrights for musical compositions (Class (e)) as well as one copyright for the dramatico-musical work (Class (d)). The District Court awarded $2700 for the multiple infringements.

Pursuant to our opinion in SUPER-STAR—No. 75–7076, the proper measure of "in lieu" statutory minimum damages should have been 27 copyrights x $250 x 2 performances or $13,500, as plaintiffs contend. We remand, accordingly, with a direction to enter judgment for $13,-500, or such greater sum within the limitations of 17 U.S.C. § 101(b) "as to the court shall appear to be just."

The judgments in Nos. 75–7076 and 75–7077 are reversed with a direction to enter judgments in conformity with this opinion.